NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3340
_____

BUD DAVIS TRUCKING;
AMERICAN MINING INSURANCE CO.,
                                        *Petitioners*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
MARGARET PHIPPS, on behalf of John Phipps,

                                        *Respondents*

On Petition for Review of a Decision and Order
of the Benefits Review Board, United States Department of Labor
BRB No. 1: 13-0361
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2015

Before:  SMITH, JORDAN, SLOVITER, <u>*Circuit Judges*</u>.

(Opinion filed:  March 23, 2015)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SLOVITER, *Circuit Judge*.

Bud Davis Trucking ("Bud Davis") and its insurance carrier, American Mining Insurance Company (collectively "Petitioners") petition this court to review the decision of the United States Department of Labor Benefits Review Board ("the BRB"), which affirmed an award of disability benefits under the Black Lung Benefits Act ("the Act"), 30 U.S.C. §§ 901–944, to the wife of deceased coal miner John Phipps ("Phipps"). For the reasons that follow, we will deny the petition for review. [1]

I.

On May 1, 2009, Phipps filed his second application for benefits under the Act claiming that, as a result of coal dust inhalation during his thirty-six-year career as a coal miner and a coal-hauling truck driver, he suffered a total disability caused by coal workers' pneumoconiosis—commonly known as black lung disease. Phipps, who smoked cigarettes for several years and pipe tobacco for more than half of his life, died a year after he filed his benefits claim. His wife, Margaret Phipps ("claimant"), continued the action on her husband's behalf. On February 14, 2011, the U.S. Department of Labor issued a proposed decision awarding benefits. Phipps' former employer, Bud Davis, requested a hearing to challenge the proposed order. The hearing took place on June 13, 2012.

---

[1] The parties agree that this court has jurisdiction to review a final order of the BRB pursuant to 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a). *See Helen Mining Co. v. Dir., Office of Workers' Comp. Programs*, 650 F.3d 248, 251 n.4 (3d Cir. 2011).

On April 8, 2013, the Administrative Law Judge ("ALJ") found, in a thorough, well-reasoned opinion, that claimant was entitled to benefits under the Act. On May 21, 2014, the BRB affirmed the ALJ's Decision and Order Granting Benefits. On July 18, 2014, Petitioners filed a timely petition for review of the BRB's decision affirming claimant's award of benefits.

## II.

We "review the entire record to determine if the ALJ's factual findings are rational, consistent with applicable law, and supported by substantial evidence on the record considered as a whole." *Soubik v. Dir., Office of Workers' Comp. Programs*, 366 F.3d 226, 233 (3d Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "If substantial evidence exists, we must affirm the ALJ's interpretation of the evidence even if we 'might have interpreted the evidence differently in the first instance.'" *Balsavage v. Dir., Office of Workers' Comp. Programs*, 295 F.3d 390, 395 (3d Cir. 2002) (quoting *Old Ben Coal Co. v. Battram*, 7 F.3d 1273, 1278 (7th Cir. 1993)); *see also Westmoreland Coal Co. v. Cochran*, 718 F.3d 319, 322 (4th Cir. 2013) (observing that circuit courts "are not at liberty to substitute [their] judgment[s] for that of the ALJ but rather must defer to the ALJ's evaluation of the proper weight to accord the evidence, including conflicting medical opinions" (internal quotation marks and citation omitted)). While we defer to the ALJ's factual determinations, "[w]e exercise plenary review over the ALJ's legal conclusions adopted by the BRB." *Soubik*, 366 F.3d at 233.

III.

The ALJ concluded, after a systematic examination of the medical evidence and after weighing the credibility and credentials of the various physicians who opined on and interpreted Phipps' medical records, that claimant was entitled to black lung benefits. *See* 20 C.F.R. §§ 718.202–718.205 (articulating the eligibility requirements to receive black lung benefits). One of the requirements for the receipt of benefits is that the miner suffer from pneumoconiosis.[2] *Id.* §§ 718.204–718.205. The ALJ determined that claimant was entitled to a statutory presumption of pneumoconiosis-induced total disability and that Bud Davis failed to rebut the presumption "by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4). In reaching this conclusion the ALJ discussed in great detail the plethora of medical evidence relating to Phipps' claim. Because Bud Davis failed to rebut the presumption of total disability, the ALJ awarded claimant the requested benefits.

IV.

In seeking a petition for review, Petitioners recount the vast amount of the often conflicting medical evidence that was presented to the ALJ. This includes many x-rays and imaging studies of Phipps' chest that were taken over the course of more than a

---

[2] The regulations state that "'Clinical pneumoconiosis' consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1).

4

decade, arterial blood gas studies, pulmonary function tests, and numerous treatment records and medical opinion reports. Petitioners argue that the ALJ conducted an incomplete review of the myriad medical evidence in finding that Phipps suffered from clinical pneumoconiosis. They further contend that the ALJ's erroneous finding of clinical pneumoconiosis adversely affected the ALJ's credibility findings regarding certain medical opinions—in particular, the medical opinions provided by Dr. Gregory Fino and Dr. George Goodman, both of whom opined Phipps did not have pneumoconiosis. Petitioners, in essence, argue that because the interpretations of the relevant medical imaging studies given by Dr. Fino and Dr. Goodman were not discussed in the "Existence of Pneumoconiosis" portion of the ALJ's opinion, the ALJ erred by failing to consider them. Petitioners speculate that had the ALJ considered these opinions, the ALJ would have ruled in their favor. Petitioners contend that the weight of the medical evidence demonstrates that Phipps' disabling respiratory impairment was caused, not by pneumoconiosis, but rather by his extensive smoking history.

V.

After examining the Petitioners' arguments in light of the well-reasoned decisions of the ALJ and BRB, we are not persuaded. Petitioners' contention that the ALJ did not consider the opinions of Drs. Goodman and Fino is misplaced. The ALJ's opinion includes an overview of, and numerous references to, their reports. However, the ALJ, in carrying out the role of fact finder, expressly discredited their opinions in the course of a lengthy decision. *See, e.g.*, App. at 42. Furthermore, ALJs, in making decisions regarding disability benefit awards, are entitled to credit the opinions of non-treating

5

physicians—such as Drs. Goodman and Fino—less than opinions given by treating physicians. *See Soubik*, 366 F.3d at 235.

The BRB, on review, affirmed the ALJ's ruling, observing that "the record fails to support [Bud Davis'] argument that the [ALJ's] failure to consider the negative readings of Drs. Goodman and Fino would have altered the [ALJ's] finding on the issue of clinical pneumoconiosis." App. at 17. We agree with the BRB's reading of the record.

We can add little to the thorough discussions of the ALJ and BRB. We note that Petitioners' attempts to undermine the ALJ's findings by pointing to the opinions of Drs. Goodman and Fino ignore the ALJ's role as fact finder and the responsibility of this court to "defer to the ALJ's evaluation of the proper weight to accord the evidence, including conflicting medical opinions." *See Westmoreland Coal Co.*, 718 F.3d at 322 (internal quotation marks and citation omitted). Accordingly, we conclude that the ALJ's finding that Phipps had pneumoconiosis was "rational, consistent with applicable law, and supported by substantial evidence on the record considered as a whole." *Soubik*, 366 F.3d at 233.

Once the ALJ, after weighing the competing medical evidence, determined that the statutory presumption of pneumoconiosis had not been rebutted, the ALJ was entitled to give little weight to the medical testimony that was inconsistent with that finding in reaching the conclusion that Bud Davis did not rebut the presumption of total disability. *See* App. at 42-43 ("The opinions of the physicians finding no pneumoconiosis must all be discredited. . . . I accordingly give little to no weight to the disability causation opinions of Drs. Goodman and Fino."). Generally, "an ALJ may not credit a medical

6

opinion stating that a claimant did not suffer from pneumoconiosis causing respiratory disability after the ALJ had already accepted the presence of pneumoconiosis unless the ALJ stated 'specific and persuasive reasons' why he or she relied upon such an opinion." *Soubik*, 366 F.3d at 234 (quoting *Scott v. Mason Coal Co.*, 289 F.3d 263, 269 (4th Cir. 2002)). We have previously observed, "[c]ommon sense suggests that it is usually exceedingly difficult for a doctor to properly assess the contribution, if any, of pneumoconiosis to a miner's death if he/she does not believe it was present." *Id.* Thus, we conclude that the ALJ was permitted to further discount the causation opinions of Drs. Fino and Goodman, which reached an inconsistent conclusion on the question of the presence of pneumoconiosis. Furthermore, contrary to Petitioners' suggestion, it is clear that the ALJ was fully cognizant of Phipps' smoking history and nonetheless concluded that Bud Davis failed to rebut, by a preponderance of the evidence, the statutory presumption of pneumoconiosis-induced total disability. We have no basis to disturb this finding.

## VI.

For these reasons, we will deny the petition for review.